## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| PATRICE GRAY | § | |
| *Plaintiff* | § | |
| v. | § | |
| | § | |
| | § | |
| JUST ONE DIME COACHING, LLC, d/b/a | § | Case Number: |
| DONE FOR YOU BY JUST ONE DIME, d/b/a | § | 1:22-cv-1105 |
| VERITUS A SERIES OF EMBUE, LLC, d/b/a | § | |
| VERITUS TEXAS COMMERCIAL ONE, LLC, | § | |
| d/b/a VERITUS TEXAS ONE, LLC; BRETT | § | |
| GEORGE; and TRAVIS S. KNIEP | § | |
| *Defendants* | § | |

## PLAINTIFF GRAY'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, Patrice Gray ("Plaintiff" or "Ms. Gray" herein), by and through her undersigned counsel, files this Original Complaint against Defendants Just One Dime Coaching, LLC, d/b/a Done for You By Just One Dime, d/b/a Veritus a Series of Embue, LLC; Veritus Texas Commercial One, LLC; Veritus Texas One, LLC; Brett George, and Travis S. "Seth" Kniep (Defendants collectively referred to herein as "JOD" or "JOD Defendants") and alleges as follows:

## I.  THE PARTIES

1.      **Plaintiff Patrice Gray** is an individual residing in the state of Ohio.

2.      **Defendant Just One Dime Coaching, LLC, d/b/a Done for You By Just One Dime, d/b/a Veritus a Series of Embue, LLC** is a limited liability company organized under the laws of the State of Texas.  Defendant's principal place of business is in Austin, Texas, in Travis County.  Its registered agent for service is Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Texas, 78731.

3.      **Defendant Travis. S. Kniep** is an individual residing in Austin, Texas, in Travis County.  He may be served with process at his place of business, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729.

4.      **Defendant Brett George** may be served with process at his place of business, 8516 Anderson Mill Road, Suite 200, Austin, Texas, 78729, or wherever he may be found.

## II. PERSONAL JURISDICTION

5.      This Court has personal jurisdiction over the corporate Defendants because they are organized and have a registered agent in Texas.

6.      Defendant Travis S. Kniep is a resident of Texas.

7.      Brett George purposely availed himself of the laws and protections of the state of Texas by working full-time for a Texas company.

8.      Based on their general and specific contacts with the State of Texas, Defendants have personally availed themselves of the privilege of conducting activities within the State of Texas and have minimum contacts with the State of Texas.

9.      Additionally, Paragraph 14 of the Services Agreement Between Patrice Gray and Just One Dime ("the Services Agreement"), the contract that governs in this matter, provides, in part:

> Both parties agree that any litigation or arbitration between the parties will take place in Travis County, Texas.  The parties hereto consent to and waive any objection to personal jurisdiction or venue in any forum located in that county, the personal jurisdiction and the exclusive venue of all federal and state courts in Travis County, Texas, for hearing all disputes under this Agreement.

## III.    SUBJECT MATTER JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is over $75,000.00. There is also complete diversity of citizenship between the parties.

11.     Furthermore, this Court has subject matter jurisdiction under 28 USC § 1331, as this case raises a federal question under the laws of the United States.

12.     Venue is proper in this district under 28 U.S.C. §1391(b)(1), because the JOD Defendants reside and/or work in this district.

13.     Specifically, two of the Defendants are located in Travis County, Texas, part of the Austin Division of the Western District of Texas; and the remaining Defendant is employed by a company in Travis County.

## IV.  CONDITIONS PRECEDENT

14.     All conditions precedent to this action have been performed, have occurred, or have been waived.

## V.  STATEMENT OF FACTS

### A.  *Done For You's Program & Promises*

15.     Done For You by Just One Dime ("JOD") is a group of companies led by Travis S. "Seth" Kniep ("Defendant Kniep" herein) that pitches itself as a "turnkey service" which "turns your investment into a full-blown business on Amazon which we manage end-to-end, making it a passive investment for you."[1]

---

[1] *See* Exhibit 1, Power Point Presentations.



16.     Defendant Kniep makes it clear in recruitment videos that JOD does not provide coaching or training for its clients, as all work is done by JOD.  JOD further pledges that it launches "only high ticket products with strong margins," and that "[i]nstead of going for high sales velocity at razor thin margins, we sell products with huge profit chunks per sale."[2]

17.     According to some of their advertising, "Seth [Kniep] and the Just One Dime team manage over 100 million in annual Amazon revenue," has made numerous "multi-millionaires," and "builds name-brand Amazon stores for silent investors and independent entrepreneurs looking for unprecedented ROI's."[3]

---

[2] *See* Exhibit 1.
[3] *See* Exhibit 2, JOD's Exhibitor page at a "free tickets" Private Label marketing event (found at https://theprivatelabelexponyc.com/exhibitors/just-one-dime-coaching-llc/).

18.     JOD advertises that it "runs a full time sourcing team in China and multiple fulfillment centers in the United States."[4]

19.     JOD claims it is highly selective in choosing its investors, and that it goes through the motions of screening prospective investors.  In fact, JOD claims that it "runs the Amazon store for one of the sharks from Shark Tank TV show."[5]

20.     In truth, JOD accepts anyone and everyone who will pay its initiation fees.  This results in many of its investors competing against each other for sales of essentially the same products.

21.     In a cash flow example using a product that sells for $100, JOD asserts that $60 goes to costs (including $15 to Just One Dime) and the remaining $40 goes to the seller.[6]

22.     Sadly, what Ms. Gray has learned after sinking thousands of dollars into the JOD program is that it does *not*, in fact, provide turnkey service, it does *not* provide high-ticket items, and it does *not* provide anything approaching a 40% cut to the seller.  In fact, JOD has provided her next to nothing.

---

[4] *See id.*
[5] *See id*.
[6] *See* Exhibit 3, email "You're booked! — read this before your meeting"

23.     JOD promises that investors will eventually be able to resell their JOD businesses for at least 50 times their original investments.[7]  A video entitled "Just One Scam" from YouTuber Coffeezilla features a clip of Defendant Kniep stating that a conservative return on investment within 12 months is 200%.[8]

24.     Interestingly, that statement is redacted from the latest versions of the video being used by JOD.

25.     But JOD's eventual removal of this guarantee from the video does not negate the fact that numerous JOD customers, including Plaintiff Patrice Gray, relied on it to their detriment.

26.     And, as part of his sales pitch, Defendant Kniep states that JOD is invested in its investors because, if they don't make money, then Defendant Kniep doesn't make money.  However, while investors like Ms. Gray lost money that was desperately needed to purchase basic necessities for orphans in Haiti, Defendant Kniep and his family were using that money from the "Done for You" program to invest in real estate.  Today, Defendant Kniep and his family enjoy spending time

---

[7] *See* Exhibit 4, JOD YouTube video "Amazon Automation – FBA Business Run for You" at https://www.youtube.com/watch?v=5aIIFqCW2ec, featuring Travis Kniep (streamed live on July 31, 2020), with accompanying Transcript. Note: video exhibits will be provided to the Court via flash drive.

[8] *See* https://www.youtube.com/watch?v=r_EfpOV2VV0 at 3:58, which contains a clip of Defendant Kniep making this statement. The rest of the video is commentary around it made by Coffeezilla.

in homes that they either own directly (or through companies owned by them) in places like the snow skiing resort town of Breckenridge, Colorado; a luxury corner unit at the Carlyle Hotel in Miami; a luxury log cabin in Gatlinburg; property in Guatemala; property in Mexico; and likely even more locations.

### B. *Plaintiff Patrice Gray, the Haitian Orphans, and the Funding Search*

27.     Ms. Gray is a midwife by trade.   Back in 2016, she went with Compassion International on a trip to Haiti to volunteer with a medical mobile unit.   She was so moved by the plight of the Haitian children that she founded a charity called Haiti's Angels, which operates and orphanage in Haiti.



28.     When Ms. Gray came across JOD's sales pitches, she believed she had found a reliable investment she could use to multiply her organization's funds and give her the resources to do more good works for the children.[9]  Her intention in working with JOD was to give additional aid to the children at her Haitian orphanage.  Sadly, because JOD duped Ms. Gray, the orphanage has gone without the extra financial help.  Additionally, since Ms. Gray borrowed money to invest in JOD, her own finances are in shambles.

29.     Meanwhile, Ms. Gray's Haitian charity is in need of more assistance than ever, as the political and economic climates in that country have continued to deteriorate.[10]

30.     Ms. Gray explained to Defendant Kniep personally the goals of her nonprofit and the need to raise funds.  Defendant Kniep explained to her that it would only be four to six months before her products started seeing profits.[11]

---

[9] *See* www.mdwforbabies.wixsite.com/HaitisAngels.
[10] *See* https://theweek.com/haiti/1017639/the-driving-forces-behind-the-ongoing-crisis-in-haiti
[11] *See* Exhibit 5

### C. JOD Services Agreement

31.    On December 3, 2020, Ms. Gray entered into a Services Agreement with Just One Dime Coaching LLC, a Texas Company, in which JOD stated it would be "building, managing, optimizing and scaling an Amazon store" for her.[12]

32.    "Exhibit A" of the Services Agreement ("the Agreement") contains a laundry list of services JOD (referred to in the Agreement as "The Company") promised to supply for Ms. Gray ("the Client").[13]

33.    These services included finding unique, high-quality products with favorable profit margins, applying for brand protection programs on Amazon to prevent others from "piggy-backing" on Ms. Gray's listings; and building, testing and optimizing Amazon PPC ads on Ms. Gray's listings to increase their rankings on the website.

34.    The Agreement also promised that JOD would respond to critical purchaser reviews and negative seller feedback.

---

[12] *See* Exhibit 6, Services Agreement, including exhibits A-C.
[13] *Id.*

35.    Exhibit C of the Agreement[14] includes a rundown of financial responsibilities and payouts assigned to JOD and to Ms. Gray, respectively. Exhibit C provides:

Company is providing the service of building and managing the store.

Client is paying for all business costs including, but not limited to manufacturing, shipping, customs & duties, photography, product videos, PPC, Amazon FBA fees, etc.

FBA fees, the monthly Amazon professional account fee, and PPC fees will be paid to Amazon by the Client directly.

All other expenses will be paid by Client to the Company and then Company will pay the vendor directly.  This can include but is not limited to the photographer, supplier, social media platform building, keyword and SEO optimization off the Amazon platform, or any other third party who provides a service to help grow the store.  The Company will invoice the Client, payable within 15 days of sending the invoice.

The Client will pay the Company for its services as follows:[15]

- $30,000 for building the Amazon store and launching 3 product(s) on Amazon including all the services in Exhibit A due before Company begins building the Amazon store.

- A percentage of gross sales revenue is payable to Company on a sliding scale. Company will send an invoice to Client every 3 months, payable within 15 days of send the invoice, based on the following profit margins:

- 0% to 9.99% margin – Just One Dime receives nothing

---

[14] *Id.*

[15] *Id.*

- 10% to 19.99% margin - Just One Dime receives 5% gross sales revenue

-  20% to 29.99% margin - Just One Dime receives 10% gross sales revenue

- 30% and above margin - Just One Dime receives 15% gross sales revenue

- Revenue share is capped at 15% gross sales revenue

36.    Of course, in Ms. Gray's case, there were never any profits.  Thus, it is completely irrelevant whether Ms. Gray 0%, 5%, 10%, 15%, or 30% cut.

37.    On January 1, 2021, Ms. Gray sent her initial payment of $30,000 ($10,000 per product) to JOD as provided in the Services Agreement.[16]   As requested, Plaintiff Gray mailed a personal check to Defendant Kniep's daughter, Atalie Kniep ("Ms. Kniep").

38.    JOD considers the initial fee of $10,000 per product to be a "development fee" which goes entirely to JOD's "overhead" costs.  Ms. Gray anticipated having to pay additional money for the products themselves, shipping fees, trademark registration costs, and various other expenses for which she was responsible under the Agreement.

---

[16] *See* Exhibit 7 JOD Quickbooks Invoice for $30,000; Exhibit 8, Bank Statement showing check was cashed on March 3, 2021.

39.     As a new investor, Ms. Gray attended an online "kickoff meeting."  On February 1, 2021, "Elizabeth," a JOD employee, messaged Ms. Gray that there would be another meeting in 30 days, at which time they would discuss Ms. Gray's product niche.  Then there would be a meeting with Defendant Brett George ("Defendant George" herein), her JOD "brand builder," in 60 days to "have a comprehensive review of the market and the products we wish to launch."[17]

### D. Broken Promises

40.     For the remainder of 2021, Ms. Gray heard little from JOD.  She had been promised a great deal of contact with Defendant George, a purported expert in online sales.  However, he had very little time for her.

41.     Months passed, and JOD still did not assign Ms. Gray products for her Amazon store.  Nevertheless, Ms. Gray paid $350 on February 28, 2022 for a logo design which JOD informed her is required by Amazon.[18]  In truth, however, Amazon only requires that its "upper tier" sellers use a logo.

42.     On April 6, 2021, Ms. Gray paid $250 for GS1 products.[19]

---

[17] *See* Exhibit 9, 2/1/2021 message from Elizabeth.
[18] *See* Exhibit 10, Logo Receipt.
[19]  *See* Exhibit 11, Receipt for GS1 order.

43.   By November, 2021, Ms. Gray still had seen no forward movement on her Amazon store.  Ms. Gray became increasingly upset, as she was paying interest on the $30,000 loan she had taken out to pay JOD's development fee.

44.   When Ms. Gray expressed her dissatisfaction with the company, JOD sent her a video message saying they were too busy getting products out to respond to her concerns.[20]

45.   On January 21, 2022, at Defendant Kniep's urging, Ms. Gray signed a non-disclosure agreement.[21]  Defendant Kniep also signed the agreement on JOD's behalf.  The document essentially prohibits both parties from disclosing the other's "confidential information" and "trade secrets."

46.   Ms. Gray maintains that, considering Defendants herein have breached the Services Agreement, the non-disclosure agreement is no longer binding on her.

47.   JOD offered Ms. Gray an Online Arbitrage agreement, which she wisely refused to sign, as its terms favored JOD and would have taken away some

---

[20] *See* Exhibit 12, video.
[21] *See* Exhibit 13, Done For You by Just One Dime Mutual Non-Disclosure Agreement.

of her rights to seek consumer protection.  In fact, JOD was quite aggressive in pushing its clients to sign the Online Arbitrage agreement.

48.     Finally, on April 22, 2022, about a year and a half after making her initial $30,000 investment, when she still had received no products, Ms. Gray messaged Atalie Kniep to request a full refund.  Ms. Gray stated she was no longer interested in JOD.[22]

49.     Defendant Kniep personally responded to Ms. Gray's refund request by messaging her, in part, that "A lot of work has been done to build your business up to this point and probably a lot more than you realize." Defendant Kniep further stated,

> If you were to walk away from the contract, a refund would not be an option for us.  If you breach our agreement we lose our opportunity to make money with you which is a lot of work, time, and money lost.[23]

50.     It was not until April, 2022 that JOD at long last proposed products to Ms. Gray.  They were all products for pets:  a front car seat cover, a back car seat cover, and a grooming tool.  Not surprisingly, JOD did not give her projected profit

---

[22] *See* Exhibit 14, Plaintiff's text message of 4/22/2022 to Ms. Kniep requesting a refund.
[23] *See* Exhibit 15, Defendant's text message of 4/25/22 to Ms. Gray.

margins.  But these are clearly not the types of high profit-margin products JOD led Ms. Gray to expect.

51.     On April 29, 2022, as if there had been no issues with their services, JOD sent Ms. Gray a message, stating,[24]

> Hey Patrice,
>
> I wanted to bring you the latest news on your upcoming order.
>
> We are continuing to negotiate with a manufacturer.  Although we have made headway on lead times, the times they are giving are still unsatisfactory.  We will update you soon!
>
> The Investor Success Team
>
> Just One Dime

52.     As JOD continued to string her along, Ms. Gray dutifully held up her end of the bargain, believing that if she kept investing money, she would eventually turn a profit for her Haitian orphans.  Unfortunately, the business venture that promised to be lucrative ended before it began.  Ms. Gray has nothing to show for her investment.

53.     Finally, on October 13, 2022, Defendant Seth Kniep announced during the monthly JOD Done for You investor meeting that he is closing the Done for You program with which Ms. Gray contracted, and that JOD will *not* be offering

---

[24] *See* Exhibit 16, 4/29/22 text message from JOD to Patrice Gray.

any refunds to participants.  Thus, Ms. Gray has invested money that she has no hope of recovering without seeking legal redress in the courts.

### E.  Intimidation Factor

54.     The following are just a couple of the high-pressure tactics that JOD used with Ms. Gray:

- Following Ms. Gray's request for a $30,000 refund, Defendant Kniep sent her a text message stating, in part, that "A lot of work has been done to build your business up to this point and probably a lot more than you realize." Defendant Kniep further stated, "If you were to walk away from the contract, a refund would not be an option for us."[25]  He went on to say that JOD had spent a lot of time and money researching products, negotiation with factories, and forecasting costs. Finally, Defendant Kniep suggested that if Ms. Gray could not afford the costs of the "private label" program, JOD had an alternative (assumedly Online Arbitrage) that was a less costly alternative.[26]

---

[25] *See* Exhibit 15
[26] *Id*.

- After Defendant Kniep received a demand letter from Ms. Gray's counsel, and with the knowledge that she was represented, he sent Ms. Gray a text message stating, in part, "We received your letter from the lawyer.  Before you go the legal route I wanted to reach out directly and see if you are open to an open conversation with me and Brett."[27]   In response, the undersigned counsel sent Defendant Kniep a cease-and-desist letter dated May 13, 2022.[28] Counsel cautioned Mr. Kniep not to make any further attempts to contact Ms. Gray directly.

## F. The Disappearing Investment

55.    Finally, on October 13, 2022, during a monthly JOD investor meeting, Defendant Kniep announced to investors that he would be closing the "Done for You" program and will NOT be offering refunds to those who had already paid into it.

56.    Strangely, Ms. Gray did not have access to that meeting.  However, she was able to view a recording of the meeting on the Discord website.[29]

---

[27] *See* Exhibit 17, 5/11/2022 text message from Mr. Kniep to Ms. Gray.
[28] *See* Exhibit 18, cease-and-desist letter from Ms. Gray's counsel to Kniep and George.
[29] See https://vimeo.com/760079162/60e68a993f?__s=9bvvztn0ghszq1oe6xap&utm_source=email&utm_campaign=PL+Shutdown, JOD investors meeting of October 13, 2022.

57.    On October 14, 2022, Defendant Kniep sent JOD investors an e-mail message recapping the October 13 meeting and informing them that it was shutting down the JOD Private Label program on October 28, 2022.  Mr. Kniep reiterated that there would be no refunds for investors, although they had the option of participating in JOD's Online Arbitrage program *for an additional investment of $20,000*.  Ms. Gray did not personally receive that e-mail message, but she was able to get a copy of it through another JOD investor's posting of the e-mail on the Discord website. [30]

58.    Defendant Kniep has also publicly announced layoffs of JOD staff.

59.    Understandably, this has caused Ms. Gray a great deal of concern about her ability to regain from JOD the funds needed to repay the money she borrowed and to sustain her Haitian orphanage.

## VI.  CAUSES OF ACTION

**COUNT 1 – *Failure to Register Securities Under the Securities Act of 1933***

60.    Plaintiff Gray incorporates the preceding paragraphs as if repeated fully herein.

---

[30] *See* Exhibit 19, 10/14/2022 e-mail from Mr. Kniep.

61.     Plaintiff Gray alleges that contract into which she and Defendants entered is an unregistered security, and as such it violates the Securities Act of 1933, as amended (the "Securities Act").  The Securities Act broadly defines securities "to include a long list of financial instruments, including 'investment contracts.'"  *SEC v. Arcturus Corp.,* 928 F.3d 400, 409 (5th Cir. 2019).   To be classified as a security, an investment contract must meet three requirements: "'(1) an investment of money; (2) in a common enterprise; (3) with profits derived from the efforts of others.'"  *Id.,* (citing *SEC v. W.J. Howey Co.,* 328 U.S. 293, 298-99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); and quoting *Williamson v. Tucker,* 645 F.2d 404, 417-18 (5th Cir. 1981)).

62.     Plaintiff Gray maintains that the Services Agreement is an investment contract that constitutes a security. The transactions between Plaintiff Gray and Defendants satisfy the three requirements enunciated by the Supreme Court in *Howey* and followed in *Arcturus.*   First, Ms. Gray paid JOD $30,000 with the understanding that JOD would do all the work to set up her Amazon store. In fact, Defendants repeatedly informed Ms. Gray that this arrangement did not constitute a training course or a mentorship in online selling; that JOD would be doing everything.[31] Secondly, the common enterprise agreed upon was to sell

---

[31] *See* Exhibit 3, "Amazon Automation - FBA Business Run for You" video at 24:00, wherein Mr. Kniep states "You will learn a ton because you're going to have a front row seat to everything.  But this is not training or a mentorship as that is much more time intensive.  So that would require a different pay structure."

merchandise on the Amazon website. Thirdly, Ms. Gray's profits were to be derived from the efforts of others (i.e., Defendants). When evaluating whether an investment was made with an expectation of profits from the efforts of others, Texas courts ask whether the efforts made by others are "those essential managerial efforts which affect the failure or success of the enterprise." *Pinter, supra,* at 73 (quoting *Searsy v. Com. Trading Corp.,* 560 S.W.2d 637, 638 (Tex. 1977).

63.     Defendants sold units in JOD to Plaintiff Gray without first properly registering them as securities as required by the Securities Act.

64.     "The Securities Act of 1933 imposes strict liability on offerors and sellers of unregistered securities." *Swenson v. Engelstad,* 626 F.2d 421, 424 (5th Cir. 1980). Specifically, Section 5 of the Securities Act provides that unless "a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly. . . to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security. . ." 15 U.S.C. § 7e(a). Section 12 of the Securities Act creates civil liability for sellers violating Section 5:

> Any person who . . . offers or sells a security in violation of section 77e of this title . . . shall be liable . . . to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less

the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. §77l(a).

65.     To make a prima facie case for the unlawful sale of an unregistered security, a plaintiff must show "(1) the sale [of] or offer to sell securities; (2) the absence of a registration statement covering the securities; and (3) the use of the mails or facilities of interstate commerce in connection with the sale or offer." *Engelstad*, 626 F.2d at 425.

66.     Plaintiff Gray contends she satisfies that test.  First, it is clear from the Services Agreement that Defendants offered and sold units in JOD.  Secondly, the units Defendants sold were not properly registered as securities.   Third, Defendants used online networking platforms to solicit and communicate with potential investors.  *See SEC v. Carter*, No. 4:19-CV-100SDJ, 2020 U.S. Dist. LEXIS 200391 at *4 (E.D. Tex. 2020) (concluding that communicating with potential investors through email, obtaining investment from at least one out-of-state investor, and obtaining funds from investors through wire transfer constituted offering and selling securities through interstate commerce).

67.     For Section 12 violations, the Securities Act provides a remedy of money damages that equates to a recission of the contract.  Specifically, plaintiff

can recover "the consideration paid for [the] security with interest thereon, less the amount of any income received thereon."  15 U.S.C. §77l(a).

### COUNT 2 – *Failure to register Securities Under the Texas Securities Act*

68.     Plaintiff Gray incorporates the preceding paragraphs as if repeated fully herein.

69.     Plaintiff Gray also seeks damages under the Texas Securities Act ("TSA").  Under the TSA, a "dealer or agent may not sell or offer for sale any securities . . . unless the commissioner has issued a permit qualifying securities for sale for those securities to the issuer of the securities or a registered dealer."  TEX. GOV'T CODE §4003.001.  A plaintiff may sue a person who offers or sells a security in violation of the registration requirements for recission of the sale.  *Id.;* §4008.051. A plaintiff entitled to recission may "recover the consideration . . . paid for the security plus interest on the consideration at the legal rate from the date the buyer made the payment, less the amount of any income the buyer received on the security."  *Id.* §4008.05(a).

70.     The definition of "security" under the Texas Securities Act ("TSA") includes investment contracts. The Texas Supreme Court has adopted a test to determine when investment contracts are securities under the TSA.   In *Life Partners, Inc. v. Arnold,* 464 S.W.3d 660, 670 (Tex. 2015), the court found that an

"investment contract" for purposes of the Texas Securities Act means "(1) a contract, transaction, or scheme through which a person pays money (2) to participate in a common venture or enterprise (3) with the expectation of receiving profits, (4) under circumstances in which the failure or success of the enterprise, and thus the person's realization of the expected profits, is at least predominately due to the entrepreneurial or managerial, rather than merely ministerial or clerical, efforts of others, regardless of whether those efforts are made before or after the transaction." *Arnold, supra,* at 667.

71.     Plaintiff Gray contends the JOD Services Agreement fits this definition of an investment contract.  To qualify as an investment contract security, "the transaction must be such that, in reality, the seller or another party other than the purchaser, exercises the predominant managerial or entrepreneurial control on which the purchaser's anticipation of profits is based." *Arnold* at 674-75.

72.     The Texas Securities Commissioner has not issued a permit qualifying the JOD Services Agreement as a security in Texas or registered any of the JOD Defendants to sell securities.[32]

---

[32] *See* Exhibit 20, Certificates of the Texas Securities Commissioner affirming that JOD and Mr. Kniep were not registered with the State of Texas to sell securities, and that the JOD Services Agreements were not registered securities.

73.     Accordingly, Defendants are liable to Plaintiff Gray for recission under the Texas Securities Act.  Upon recission, Ms. Gray is entitled to recover the consideration she paid for the JOD contract plus interest thereon at the legal rate from the date of payment by her, less the amount of any income she received on the security, upon tender of the security.

**COUNT 3 – *Breach of Contract***

74.     Plaintiff Gray incorporates the preceding paragraphs as if repeated fully herein.

75.     The parties in this matter entered into a valid contract, i.e., the Services Agreement.

76.     Plaintiff Gray performed all of her obligations under the contract.

77.     Defendants materially breached the contract by failing to complete most of their obligations under the contract, including JOD's promise to provide and set up an Amazon store for her and provide three products for her to sell; and to facilitate weekly meetings with Defendant George.

78.     Defendants materially breached the contract by failing to assign Ms. Gray quality products with high profit margins.

79.     As a result of Defendants' material breach of the contract, Ms. Gray has suffered damages.

**COUNT 4 -** *Violations of the Texas Deceptive Trade Practices – Consumer Protection Act (TEX. BUS. & COM. CODE §17.46 ET SEQ.)*

80.     Plaintiff Gray incorporates the preceding paragraphs as if repeated fully herein.

81.     Defendants engaged in an unconscionable action or course of action that, to Plaintiff Gray's detriment, took advantage of her lack of knowledge, ability, experience, or capacity to a grossly unfair degree.  Specifically, Defendants lured Ms. Gray into what they knew was an unfavorable business arrangement for her by taking unfair advantage of the fact that Defendants have far more knowledge about Amazon sales than she does.

82.     Defendants falsely represented that they would set up for Ms. Gray a "full blown business" on Amazon, which they would "manage end-to-end," making it a "passive investment" for Ms. Gray.  In actuality, Defendants took Ms. Gray's money and failed to follow through on their claims that they would provide "turnkey service." Ms. Gray's initial investment of $30,000 went to pay Defendants and their staff, but in the end, Defendants failed to provide the support and services that were promised.  Ms. Gray has had to bear the losses.

83.    Defendants fraudulently employed a "bait and switch" technique, promising a better-quality product of more marketable items than they actually later offered. Defendants drew in Ms. Gray by falsely advertising that it deals in "high ticket" products with large profit margins, when at the eleventh hour, they offered her cheap products on which she would have taken a considerable loss. Defendants' fraudulent intent is demonstrated by evidence such as a video presentation in which Defendant Kniep personally explains to potential investors how they can avoid liability by setting up shell companies.[33]

84.    Plaintiff Gray has suffered economic damages from Defendants' deceptive and fraudulent behavior, and she is entitled to treble damages and attorney fees and costs under TEX. BUS. & COM. CODE §17.50.

**COUNT 5 – *Unjust Enrichment***

85.    Plaintiff Gray incorporates the preceding paragraphs as if repeated fully here.

86.    Unjust enrichment is not a distinct independent cause of action, but rather a theory of recovery.  *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.— Corpus Christi 2002, pet. denied).   A party may recover under an unjust

---

[33] *See* Exhibit 3, "Amazon Automation - FBA Business Run for You" video at 37:20.

enrichment theory where a person has obtained a benefit from another due to fraud, duress, or taking of undue advantage.  *Id*.

87.     If Plaintiff Gray does not prevail in her claim for legal remedies such as her breach of contract claim or her deceptive trade practices claim, Ms. Gray will lack a suitable remedy at law.

88.     Defendants' conduct in accepting Ms. Gray's investment without carrying out their duties under the Services Agreement constitutes more than unfair conduct – Defendants profited from their own fraudulent claims and took undue advantage of Ms. Gray.   Thus, Plaintiff Gray seeks damages in unjust enrichment as an alternative remedy.

## VII.  <u>JURY DEMAND</u>

89.     Plaintiff Patrice Gray asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VIII.  <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff Gray prays for judgment as follows:

     a.  Actual and economic damages including liquidated and unliquidated damages;

b.  Punitive damages;

c.  Treble damages, where appropriate;

d.  Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law;

e.  Pre-judgment and post-judgment interest at the maximum rate allowed by applicable law from the date of judgment until paid in full;

f.  Court costs;

g.  Attorney fees; and

h.  All other relief, special or general, legal or equitable, as Plaintiff may be shown to be justly entitled to receive.

Respectfully submitted on this __28th__ day of October, 2022.

/s/ Rain Levy Minns Udall
_____
Rain Levy Minns Udall
State Bar No. 24034581
Minns Law Firm, P.C.
d/b/a Rain Minns Law Firm
4412 Spicewood Springs Rd., Suite 500
Austin, Texas 78759-8583
Tel.: 512-372-3222
Fax: 512-861-2403
rain@rainminnslaw.com

ATTORNEY IN CHARGE FOR
PLAINTIFF PATRICE GRAY
